Gordon L. **PUCKETT,** et al., Plaintiffs,

v.

**UNITED AIR LINES, INC.,** et al., Defendants.

Kenneth C. **KUECKER,** et al., Plaintiffs,

v.

**UNITED AIR LINES, INC.,** et al., Defendants.

Nos. 84 C 5013, 85 C 3755.

United States District Court, N.D. Illinois, E.D.

Jan. 6, 1989.

**146**

AMENDED MEMORANDUM ORDER

PRENTICE H. MARSHALL, District Judge.

Plaintiffs are 133 current or former employees of United Airlines, Inc. ("United") who have worked past age sixty—the normal retirement age under United's pension plans. Each plaintiff participates in United's two pension plans: the Fixed Benefit Plan ("Fixed Plan") and the Directed Account Plan ("DAP"). Before us now is plaintiffs' motion for partial summary judgment on the issue of liability on their ADEA and ERISA challenges to the DAP.

The DAP provides a benefit based on the investment performance of an account funded by United's contribution of 9% of a pilot's annual income. It is undisputed that no contributions are made during employment past age sixty. Plaintiffs' Rule 12(e) Statement at ¶ 5. It is also undisputed that pilots over the age of sixty are precluded from making voluntary contributions and from participating in the Government Bond Fund investment option. *Id.* at ¶ 6. Plaintiffs assert that these features constitute unlawful age discrimination in violation of ADEA § 4(a)(1), 29 U.S.C. § 623(a), and ERISA § 202(a)(2), 29 U.S.C. § 1052(a)(2), as a matter of law. For the following reasons, we agree and therefore grant plaintiffs' motion.

ADEA

§ 4(a)(1) of the ADEA provides that "[i]t shall be unlawful for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, be-

cause of such individual's age...." United does not dispute the applicability of this section, but instead asserts what has come to be known as the § 4(f)(2) defense. § 4(f)(2) provides as follows:

It shall not be unlawful for an employer ... to observe the terms of ... any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter....

The employer bears the burden of proving that its age-based actions fall within the terms of this exception. *EEOC v. Home Ins. Co.*, 672 F.2d 252 (2d Cir.1982).

Plaintiffs concede that the DAP is a bona fide employee benefit plan and that United observes its terms. The disputed issue is whether the challenged features are a subterfuge to avoid the ADEA's prohibition on age discrimination.

█ United offers two arguments in this regard. First, with respect to the denial of United contributions and prohibition on employee contributions after age sixty, United argues that these features pre-dated the passage of the ADEA, and therefore, according to *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), they cannot be a subterfuge to avoid the purposes of the ADEA. Alternatively, United asserts that regardless of *McMann*'s applicability, valid business purposes exist for all of the challenged features, thereby bringing them within the protection of § 4(f)(2).

Initially, we reject United's argument that *McMann* precludes liability in this case. The effect and limitations of the *McMann* holding were discussed in *EEOC v. Home Ins. Co.*, 672 F.2d 252, 258–59 (2d Cir.1982):

[T]he thrust of *McMann* is that ... the employer can meet its burden of proving

that the plan is not a subterfuge simply by showing that it was established long before the ADEA was enacted. Where, however, the pertinent terms of the plan were adopted after the ADEA was enacted, this avenue of disproving subterfuge is simply not open. Proof by the employer of non-age-based reasons will then be required.

*See also, EEOC v. Westinghouse Elec. Corp.*, 632 F.Supp. 343, 368 (E.D.Pa.1986) (because the plan had "undergone negotiation, adjustment, and consideration many times since the passage of the ADEA," *McMann* method of proof unavailable); *EEOC v. County of Orange*, 837 F.2d 420, 423 (9th Cir.1988) (post-ADEA modifications may convert a benefit plan into a subterfuge if they are "significant or at least relevant" to the challenged practice).

Here, relevant changes were made to the plan's provision pertaining to United's 9% contribution after enactment of the ADEA. The 1976 version of the plan (then entitled the "Variable Plan") denied eligibility to those over sixty. Plaintiffs' Exhibit 45 at § 2.1. However, no provision addressed whether company contributions continued when an already participating employee worked past sixty [1]. This was consistent with United's then existing mandatory age-sixty retirement policy. *See* Stipulation and Order, docketed June 30, 1986.

In September of 1982, United revoked its mandatory retirement policy. The Variable Plan was "amended, revised, and restated" as the DAP, effective September 1, 1982. Plaintiffs' Exhibit 42 at § 1.1. The eligibility requirement remained the same, but the provision pertaining to company contributions was amended to specifically provide for cutoff when an employee works past age sixty [2].

It is clear that United was faced with a new situation—pilots working past age six-

---

**1.** The 1976 version of the paragraph entitled "Company Contributions" stated in pertinent part:

Each calendar month the Company will contribute, to any entity or entities authorized to receive such contributions under the Funding Part, on behalf of each Participant, an amount equal, in the aggregate, to 9 percent of his Earnings received by him during that month. Plaintiffs' Exhibit 45 at § 4.5.

**2.** The 1982 version of the "Company Contributions" paragraph reads as follows:

For each calendar month ending after the Effective Date, the Company will contribute, to any entity or entities authorized to receive such contributions under the Funding Part, an amount, on behalf of each Participant employed by the Company during that month *who has not reached his Normal Retirement*

ty—and amended its plan to specifically deny employer contributions in such instances. Even if, as United argues, this revision represents a clarification of a pre-existing but unstated policy, it nonetheless shows that the policy was reviewed, reconsidered and then consciously continued despite its unlawfulness. This, we believe, is sufficient to remove the denial of post-age sixty contributions from the protection of *McMann.*[3]

The question thus becomes whether United has produced sufficient evidence of a nondiscriminatory purpose for the challenged features. *Home Ins. Co.,* 672 F.2d at 258–259. Plaintiffs argue that United must show that cost considerations were the basis for its actions. They contend that no such basis exists for the DAP features challenged here. United does not refute the lack of cost-basis, but instead argues that the 4(f)(2) defense does not require such proof. Working from this premise, United proceeds to outline what it contends is the plan's lawful purpose.

■ The clear weight of authority supports plaintiffs' position that 4(f)(2) exempts liability for age-based actions only when an employer can justify such with age-related cost considerations. The applicable EEOC regulations permit lower benefits for older employees only if the cost incurred on behalf of the older worker is equal to that incurred on behalf of the younger worker. 29 C.F.R. § 1625.10(a)(1) (1987). The court in *Karlen v. City Colleges of Chicago,* 837 F.2d 314, 319 (7th Cir.1988) relied on these regulations in reversing summary judgment in favor of an employer, stating:

[W]here, as in the present case, the employer uses age—not cost, or years of service, or salary—as the basis for varying retirement benefits, he had better be able to prove a close correlation between

> *Date,* equal, in the aggregate, to nine percent of his Earnings received by him during that month.

Plaintiffs' Exhibit 42 at § 4.6 (emphasis added).

**3.** The restriction on voluntary contributions also appears to be a post-ADEA feature. United notes in its argument that the Variable Plan became noncontributory in 1963. United's Opposition Brief at 8; *see also* United's Exhibit A at ¶ 10. There is no indication that this was

age and cost if he wants to shelter in the safe harbor of section 4(f)(2).

Finally, any doubt that cost justification is the *sole* means of disproving subterfuge—defendant contends *Karlen* is not so broad—is resolved by the most recent decisions addressing the issue, *EEOC v. City of Mt. Lebanon, Pa.,* 842 F.2d 1480, 1489–94 (3rd Cir.1988), and *Betts v. Hamilton County Bd. of Mental Retardation,* 848 F.2d 692, 694–95 (6th Cir.1988), *prob. juris. noted,* —— U.S. ——, 109 S.Ct. 256, 102 L.Ed.2d 245 (1988). Each case specifically held that differences based on age are exempted from liability only when the employer proves a cost justification as set forth in the regulations.

■ Thus, because the challenged features of DAP are facially discriminatory, and United has offered no evidence that the age-based differences are based on age-related cost considerations, plaintiffs are entitled to judgment as a matter of law on their ADEA claim. *See Betts,* 848 F.2d at 695 (summary judgment appropriate where employer fails to produce cost justification evidence).

### ERISA

■ Plaintiffs claim that United's actions with respect to the DAP violate § 202(a)(2) of ERISA, 29 U.S.C. § 1052(a)(2). That section provides that "[n]o pension plan may exclude from participation (on the basis of age) employees who have attained a specified age...."

Plaintiffs argue that this provision, by its plain terms, prohibits age-based discrimination with regard to pension benefits. United contends that plaintiffs' interpretation is too broad; the provision refers, United argues, to the *joining* of a pension plan, and no plaintiff was disallowed entry into the DAP on the basis of age.

changed before the enactment of the ADEA in 1967. However, the 1976 and 1982 versions of the plan do allow voluntary contributions by pilots, and restrict this option to pilots under sixty. Plaintiffs' Exhibit 45 at §§ 4.1, 6.3; Plaintiffs' Exhibit 42 at §§ 4.1, 4.8. Although the parties have given scant attention to this issue in their briefs, we believe that this feature also falls outside the scope of *McMann.*

We believe that the DAP's challenged features fit precisely within the plain terms of the statute. The plan excludes from participation, on the basis of age, pilots who have attained the age of sixty. While United's interpretation is tenable, it has cited no authority supporting its restrictive reading, and the construction arguments it presents are not sufficient to override the plain language of the provision. *See generally Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (plain language of statutes must be given effect unless there is good reason to believe Congress intended a more restrictive meaning); *Kross v. Western Electric Co.,* 701 F.2d 1238, 1242 (7th Cir.1983) (ERISA must be construed in favor of employees). Plaintiffs' motion is granted as to its ERISA claim.

## ORDER

Plaintiffs' motion for summary judgment on their ADEA and ERISA challenges to the Directed Account Plan is granted. Summary judgment is granted on the issue of liability only.