[No. G007605. Fourth Dist., Div. Three. Jan. 22, 1991.]

MARBLEHEAD, Plaintiff and Respondent, v.
CITY OF SAN CLEMENTE et al., Defendants;
CITIZENS FOR SENSIBLE GROWTH AND TRAFFIC
CONTROL, Intervener and Appellant.

COUNSEL

Shute, Mihaly & Weinberger, Mark I. Weinberger and Daniel P. Selmi for Intervener and Appellant.

John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, Susan L Goodkin, Deputy Attorney General, Peter M. Greenwald and Barbara Baird as Amici Curiae on behalf of Intervener and Appellant.

Gibson, Dunn & Crutcher, Richard G. Duncan, Jr., and Jeffrey T. Thomas for Plaintiff and Respondent.

Ronald A. Zumbrun, Edward J. Connor, Jr., Sharon L. Browne, Nossaman, Guthner, Knox & Elliott, Alvin S. Kaufer, Winfield D. Wilson and Michael J. Breining as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

MOORE, Acting P. J.—This case involves a facial attack against an initiative measure enacted by the electorate of the City of San Clemente purporting to amend the city's general plan. The lower court invalidated the measure on several grounds and issued a peremptory writ of mandate restraining its implementation. Intervener and appellant Citizens for Sensible Growth and Traffic Control appeals the lower court's ruling. We conclude the measure is an improper exercise of the electorate's initiative power because rather than amending the general plan, it directs the city council to do so. Therefore, we affirm the judgment.

FACTS

San Clemente is a general law city. Responsibility for implementing and enforcing the city's ordinances is vested in its city council. Respondent Marblehead is a limited partnership in the business of land development and owns property in San Clemente.

In March 1988, appellant successfully placed a citywide measure on the ballot for the June General Election entitled the San Clemente Citizens' Sensible Growth and Traffic Control Initiative (Measure E). Measure E is divided into eight sections. Sections 1 and 2 declare the initiative's intent and purpose and state certain findings. Both sections primarily focus on

traffic congestion. The findings conclude this condition and other problems relating to the city's growth are the result of improperly regulated "land development."

Section 3, subdivision A, states that before a "general plan amendment, specific plan, precise plan, area plan, zone change, tentative tract or parcel map" is approved or adopted, the "Standard Level of Service" for the transportation system affected by a proposed development "shall be achieved and maintained." Subdivision C of section 3 contains a similar provision related to maintaining "Adequate Service Levels" for police, fire and paramedic services, flood control, and parks. The definitions for the terms "Standard Level of Service" and "Adequate Service Levels" are contained in section 4 of the initiative. (Measure E, § 4, subds. A, B, C, D, CC.) The city is also directed to "revise its zoning ordinances and adopt zoning which conforms to this general plan amendment and ordinance." (Measure E, § 3, subds. B and D.) However, subdivisions A and C allow grading or building permits to be issued where the affected transportation system or municipal services are either below or would fall below the minimally acceptable levels, if the developer participates in a city-sponsored improvement program to maintain the standard and adequate levels of service. (Measure E, § 3, subds. A. 1, C. 1.)

Section 6, subdivision A, states: "Upon the effective date of this initiative, the general plan of the City shall be deemed to be amended to contain these concepts and enforced as such by the City. Where the initiative is in conflict with other aspects of the City's Zoning Code or other ordinances and regulations, the terms of this amendment and ordinance shall prevail over such other enactment. The City shall within six (6) months revise the text of the general plan and other ordinances to specifically reflect the provisions of this amendment and ordinance."[1]

Prior to the election respondent filed a lawsuit seeking to remove Measure E from the ballot. Relief was denied. On June 7, the city's voters adopted Measure E. Respondent filed an amended petition for writ of mandate and complaint for declaratory and injunctive relief challenging the initiative.

The lower court granted the petition. It held Measure E violated the taking and equal protection clauses of the United States Constitution (U.S. Const., 5th & 14th Amends.) and exceeded the electorate's initiative power

---

[1] Section 5 lists the exemptions to the development restrictions. Section 7 prohibits the repeal or amendment of the initiative except by "a majority of the voters at a general election." Finally, section 8 provides that if any portion of Measure E is invalid or unconstitutional, it will not affect the remainder of the measure.

on several grounds including the fact the initiative was not legislation but merely an instruction to the city council to enact legislation. Appellant filed this appeal.[2]

## DISCUSSION

### 1. *Standard of Review*

The issues presented require us to interpret Measure E. ██ When construing an initiative measure we apply the same principles used when interpreting statutes. " 'Although the initiative power must be construed liberally to promote the democratic process [citation] when utilized to enact statutes, those statutes are subject to the same constitutional limitations and rules of construction as are other statutes.' [Citation.] The same is true when a local initiative is at issue." (*Lesher Communications, Inc.* v. *City of Walnut Creek* (1990) 52 Cal.3d 531, 540 [277 Cal.Rptr. 1, 802 P.2d 317]. See also *Calfarms Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 814-815 [258 Cal.Rptr. 161, 771 P.2d 1247]; *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1202 [246 Cal.Rptr. 629, 753 P.2d 585].) ██ Furthermore, the interpretation of Measure E presents a question of law subject to our independent review. (*Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630]; *Board of Retirement* v. *Lewis* (1990) 217 Cal.App.3d 956, 964 [266 Cal.Rptr. 225].)

### 2. *Scope of the Initiative Power*

The lower court found Measure E invalid, in part, because rather than directly amending San Clemente's general plan, the initiative ordered the city council to make the amendment. Appellant disputes this claim noting the measure characterizes itself as a "general plan amendment" and specifically states the city's general plan is amended to contain its "concepts."

We conclude Measure E does not satisfy constitutional requirements. "Initiative and referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide. . . ." (Cal. Const., art. II, § 11.) The Constitution defines an initiative as "the

---

[2]The named defendants, the city and its city council, have not appealed from the judgment. The basis of appellant's participation in this case is not entirely clear. Respondent's original petition named appellant as the real party in interest. But the first amended petition alleged appellant was an intervener added by stipulation of the parties. Although defendants denied this allegation in their answer, appellant has appeared and participated in the proceedings, both in the lower court and on appeal, without objection. At oral argument, respondent's counsel stipulated to appellant's participation in this appeal.

power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them." (Cal. Const., art. II, § 8.)

■ The initiative and referendum are powers reserved by the people and liberally construed in favor of their exercise. (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]; *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 563-564 [11 Cal.Rptr. 340].) But the electorate's use of these powers is not unlimited. "Even under the most liberal interpretation, however, the reserved powers of initiative and referendum do not encompass all possible actions of a legislative body. Those powers are limited . . . to the adoption or rejection of 'statutes.' . . ." (*American Federation of Labor* v. *Eu* (1984) 36 Cal.3d 687, 708 [206 Cal.Rptr. 89, 686 P.2d 609]. See also *Hopping* v. *Council of City of Richmond* (1915) 170 Cal. 605, 609-610 [150 P. 977].)

"Legislative acts generally are those which declare a public purpose and make provisions for the ways and means of its accomplishment . . . ." (*Fishman* v. *City of Palo Alto* (1978) 86 Cal.App.3d 506, 509 [150 Cal.Rptr. 326]. In determining whether an initiative measure enacts a law, it is the substance, not the form that controls. (*American Federation of Labor* v. *Eu, supra*, 36 Cal.3d at p. 710.)

In *American Federation of Labor* v. *Eu, supra*, 36 Cal.3d 687, the Supreme Court considered a challenge to a statewide initiative requiring the Legislature to adopt a resolution requesting Congress to propose a balanced federal budget constitutional amendment, and applying to Congress to call a constitutional convention to propose such an amendment. The court invalidated the initiative, concluding it was a resolution and did not propose the adoption of a statute: "The statute may declare policy as well as provide for its implementation. Indeed it is common for statutes, including initiative statutes, to contain a section which declares policy and provides a guide to the implementation of the substantive provisions of the measure. But an initiative which seeks to do something other than enact a statute—which seeks to render an administrative decision, adjudicate a dispute, or declare by resolution the views of the resolving body—is not within the initiative power reserved by the people." (*Id.* at p. 714, fn. omitted.)

■ We find appellant's argument to be unavailing. While Measure E is described as a general plan amendment, that is not controlling.[3] It is the substance not the form which controls.

---

[3] In any event, in *Lesher Communications, Inc.* v. *City of Walnut Creek, supra*, 52 Cal.3d 531, the Supreme Court hinted that a general plan may not be the subject of an initiative. We need not decide this issue.

Contrary to appellant's argument, Measure E does not directly amend San Clemente's general plan. In effect, it constitutes a resolution by the voters declaring that the city's general plan should be revised to reflect the *"concepts"* expressed in the measure. The actual amendment of the general plan is left to the city council. Which elements of the general plan are affected and how the substantive terms of Measure E are to be incorporated into these elements is unexplained.

The city council could not simply append Measure E to the existing plan. Government Code section 65300.5 declares "the general plan and elements and parts thereof comprise an integrated, internally consistent and compatible statement of policies for the adopting agency." No element of the general plan may take precedence over the provisions of other elements. (*Sierra Club* v. *Board of Supervisors* (1981) 126 Cal.App.3d 698, 704, 708 [179 Cal.Rptr. 261].) Thus, a review of the entire general plan would be required to determine which elements need to be altered.

While it might be argued the electorate could amend a general plan and direct the city council to revise the city's zoning ordinances to comply with it, Measure E goes beyond that. It directs the city council to amend both the general plan and the zoning ordinances. This type of measure is not within the electorate's initiative power.

Therefore, we conclude Measure E constitutes an invalid exercise of the electorate's initiative power. Furthermore, since this defect affects the entire measure the initiative's severance clause cannot be used to save any part of it. (See *Calfarms Ins. Co.* v. *Deukmejian, supra*, 48 Cal.3d at p. 821.)[4]

### DISPOSITION

The judgment of the lower court is affirmed. Respondent shall recover its reasonable costs on appeal.

Wallin, J., and Sonenshine, J., concurred.

---

[4] In light of our holding, we need not resolve the other issues presented by this appeal.