Filed 5/5/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | B317353 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BS172398 |
| v. | |
| OFFICE OF ADMINISTRATIVE HEARINGS, | |
| Defendant and Respondent; | |
| BEATRICE ESSAH, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge. Affirmed.

Kelly Kim and Michael Voigt for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

———————

After years of what the Los Angeles Unified School District (LAUSD) viewed as unsatisfactory teaching performance by certificated teacher Beatrice Essah, LAUSD served Essah with a Notice of Intent to Dismiss and Statement of Charges, which included notice that Essah was suspended without pay.  Essah brought and prevailed on a motion for immediate reversal of suspension (MIRS), and thus received pay during the pendency of the dismissal proceedings.  LAUSD ultimately prevailed in those proceedings.  LAUSD then sought a writ of administrative mandamus in the superior court seeking to set aside the order granting the MIRS and to recoup the salary payments it had made to Essah during the pendency of the proceedings.  The trial court denied the writ, holding that the MIRS order is not reviewable.  The court also ruled (1) LAUSD cannot recover the payments to Essah under its cause of action for money had and received and (2) LAUSD's cause of action for declaratory judgment is derivative of its other claims.  The trial court entered judgment against LAUSD and in favor of Essah.  We affirm the trial court's judgment.

## BACKGROUND

In a letter dated April 13, 2016, the Board of Education sent Essah a Notice of Intention to Dismiss and Statement of Charges and Placement on Immediate Suspension.  The Notice stated the Board had considered "written charges, duly signed and verified, . . . that there exist cause(s) for your dismissal.  A copy of those charges is enclosed.  Please also take notice that you have been suspended without pay. [¶] Pursuant to the action of the Board of Education at said meeting, you are hereby notified that it is the intention of the Board of Education to dismiss you[.]"

2

In the attached statement of charges, LAUSD's chief human resources officer alleged problems with Essah beginning in October 2012.[1] LAUSD "ask[ed] for her immediate suspension without pay and dismissal." Specifically, the statement alleged five statutory grounds for termination: unprofessional conduct; unsatisfactory performance; evident unfitness for service; persistent violation of or refusal to obey school laws of the state or reasonable regulations for the government of schools (Ed. Code, § 44932, subd. (a)(2), (5), (6) & (8)); and willful refusal without reasonable cause to perform regular assignments as prescribed by reasonable rules and regulations of the employing district (Ed. Code, § 44939, subd. (b)).[2]

Immediate suspension of a permanent employee is authorized by section 44939, subdivision (b), when a permanent employee is charged with "immoral conduct, conviction of a felony or of any crime involving moral turpitude, with incompetency due to mental disability, with willful refusal to perform regular assignments without reasonable cause, as prescribed by reasonable rules and regulations of the employing school district, or a violation of Section 51530."[3] (§ 44939, subd. (b).) In LAUSD's view, "these causes for dismissal generally revolve

---

[1]    Charges are limited to "matters occurring [no] more than four years before the filing of the notice." (Ed. Code, § 44944, subd. (b)(2)(B).)

[2]    Further undesignated statutory references are to the Education Code.

[3]    Section 51530 prohibits "advocat[ing] or teach[ing] communism with the intent to indoctrinate or to inculcate in the mind of any pupil a preference for communism."

3

around the school district's responsibility to provide a safe school environment for their students."

Section 44939 provides "the governing board of the school district *may, if it deems that action necessary*, immediately suspend the employee from his or her duties and give notice to him or her of his or her suspension." (§ 44939, subd. (b), italics added.) Thus, suspension is not mandatory when an employee is charged with one of the activities specified in section 44939; it is not even the presumptively required action. To the contrary, by permitting suspension *if* the board deems it necessary, the statute indicates "no suspension" is the norm.[4]

Here, although LAUSD asked for immediate suspension without pay of Essah in its statement of charges, LAUSD did not explain why such suspension was necessary. LAUSD did not raise safety concerns in the charges. The only use of the word "safe" appears in charge 132, which alleges: "On or about November 13, 2015, ESSAH did not use effective strategies for promoting student participation during small group instruction nor did she foster a classroom environment that was safe and supportive. [¶] a. On many occasions, she interrupted the students before they could finish stating their responses to

---

[4] By way of contrast, the Education Code clearly specifies that suspension is mandatory in some circumstances. It is mandatory, for example, under section 44940, subdivision (a), when an employee is "charged by complaint, information, or indictment filed in a court of competent jurisdiction with the commission of any sex offense as defined in Section 44010, with a violation or attempted violation of Section 187 of the Penal Code, or with the commission of any offense involving aiding or abetting the unlawful sale, use, or exchange to minors of [certain] controlled substances." (§ 44940, subd. (a).)

4

correct their answers, or if they took a long pause to complete their thought. [¶] b. ESSAH appeared frustrated when the students did not: (1) pronounce certain words the way she pronounced them, or if they did not (2) repeat what she said exactly.  On two occasions, two students stopped responding when her tone was negative as she continued to have them repeat the same words and sentences multiple times. [¶] i. One student ignored ESSAH's request to repeat after her.  She then asked, 'Would you like to practice later?'  He did not answer her, and she moved on. [¶] ii. A female student turned her back to ESSAH for the remainder of the time and demonstrated off-task behaviors such as leaving the group to get her water bottle from her desk and staring into space."

Virtually all other charges against Essah involve her failure to co-plan with other teachers, to prepare required paperwork, including lesson plans, and to meet with parents, conduct which had allegedly been going on for years.[5]

---

[5] The charges also alleged some other conduct.  For example: In or around October 2013, she regularly and "inappropriately raised her voice at children" and regularly and "inappropriately threatened to remove students from [the] classroom."  On October 17, 2013, she interrupted the classroom teacher, told several students they were being removed from the classroom and gave "a speech" to the class.  During or about the period from approximately September 9, 2013 to October 21, 2013, she interrupted the continuity of instruction and undermined the authority of the classroom teacher, including inappropriately raising her voice at children and threatening to remove them from the class.  On or about March 7, 2014, she "did not monitor and respond to student behavior effectively" as shown by Essah talking over students who were speaking rather than telling them to stop talking, and allowing students to sit and do nothing.

On April 20, 2016, Essah timely demanded a hearing pursuant to section 44944. LAUSD then began the administrative action by filing a Request to Set on April 29, 2016. On May 10, 2016, LAUSD filed its Accusation with the Office of Administrative Hearings (OAH); the charges in the Accusation are identical to those in the Statement of Charges.

On May 16, 2016, Essah filed two documents with the OAH, one entitled "Request to Set: Motion for Immediate Reversal of Suspension" [MIRS] and another entitled "Memorandum of Defense and Hearing and Request to Set: Motion for Immediate Reversal of Suspension." According to LAUSD, Essah did not serve the documents on it. LAUSD claims it learned of the motion and received Essah's motion from the OAH. Section 44939 provides: "The motion shall be served upon the governing board of the school district and filed with the Office of Administrative Hearings within 30 days after service upon the employee of the initial pleading in the matter." (§ 44939, subd. (c)(2).) May 16, 2016 is more than 30 days from April 13, 2016, the date LAUSD served its Notice.

The OAH assigned the matter to an administrative law judge (ALJ) and set oral argument on the motion for June 10, 2016. The ALJ assigned the MIRS its own case number and related that number to the case number in the dismissal proceedings. LAUSD filed an opposition and Essah a reply brief, which LAUSD sought to have stricken.

---

On or about October 22, 2014, she did not create a classroom environment that promoted respect. She posted an inappropriate chart which contained a student drawing of a raised middle finger.

Oral argument on MIRS occurred as scheduled on June 10, 2016.  On June 21, 2016, the ALJ issued its order.  The ALJ reviewing the motion is "limited to a determination as to whether the facts as alleged in the statement of charges, if true, are sufficient to constitute a basis for immediate suspension under this section."  (§ 44939, subd. (c)(1).)  The ALJ ruled in favor of Essah, as follows: "Having considered the pleadings, written submissions of the parties, and oral argument, the district failed to allege facts which, if true, are sufficient to constitute a basis for immediate suspension under Education Code section 44939, subdivision (b)."

On July 6, 2016, LAUSD filed a petition for reconsideration of the MIRS order on the ground the ALJ lacked jurisdiction to rule on the MIRS because it was not timely filed.  The ALJ denied the petition, noting that although "[i]t appeared Ms. Essah did not serve the district with her MIRS when she filed at OAH," LAUSD thereafter "filed a lengthy Opposition to the MIRS on May 31, 2016, and vigorously participated in the oral argument on June 10, 2016."  LAUSD did not request a continuance of the hearing.  The ALJ found LAUSD "did not establish that it was prejudiced by Ms. Essah not initially serving her MIRS on the district when she filed it at OAH."

Although Essah was no longer suspended after the initial MIRS ruling, LAUSD retained authority to determine her assignment while the dismissal charges were pending.  (§ 44939, subd. (d) ["A motion for immediate reversal of suspension pursuant to this section does not affect the authority of a governing board of a school district to determine the physical placement and assignment of an employee who is suspended or placed on administrative leave during the review of the motion or

7

while dismissal charges are pending."].)  LAUSD contends it assigned her to her home but provides no record citation to support this factual claim.

Section 44939 specifically provides: "The grant or denial of the [MIRS] shall be without prejudice to consideration by the Commission on Professional Competence, based upon the full evidentiary record before it, of the validity of the grounds for dismissal.  The ruling shall not be considered by the commission in determining the validity of the grounds for dismissal, and shall not have any bearing on the commission's determination regarding the grounds for dismissal."  (§ 44939, subd. (c)(4).)  Thus, the dismissal proceedings continued after the MIRS was granted.

Although section 44944 provides that dismissal proceedings are heard by the Commission on Professional Conduct (CPC), the parties stipulated to a hearing by an ALJ rather than the CPC.  On July 6, 2017, the ALJ found evidence to substantiate many of the specific charges in the statement, including charges of willful refusal to perform regular assignments.

Having prevailed in the administrative action, LAUSD filed a petition for writ of administrative mandamus and complaint for declaratory relief and common counts (money had and received) in the superior court on September 1, 2017.  The trial court denied the writ and this appeal followed.

## DISCUSSION

A.    *LAUSD Has Not Shown That the Legislature Authorized Judicial Review of a MIRS Order.*

"The construction of a statute and its application to a particular case are questions of law to be determined by a court subject to independent review on appeal."  (*Board of Retirement*

8

*v. Lewis* (1990) 217 Cal.App.3d 956, 964.) "The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) If we construe a statute, we must do so, if possible, to achieve harmony among its parts. (*People v. Hull* (1991) 1 Cal.4th 266, 272.) We many " ' "neither insert language which has been omitted nor ignore language which has been inserted." ' " (See *People v. National Automobile & Casualty Ins. Co.* (2002) 98 Cal.App.4th 277, 282.)

Here, it is the meaning of subdivision (c)(6) of section 44939 which is at issue. That subdivision provides: "A motion made pursuant to this section shall be the exclusive means of obtaining interlocutory review of suspension pending dismissal. The grant or denial of the motion is not subject to interlocutory judicial review." (§ 44939, subd. (c)(6).) LAUSD contends that because the statutory language only expressly prohibits interlocutory review, it permits review after the final decision.

The trial court rejected this contention. The court found that although section 44939 did not forbid judicial review after a final decision, neither did it expressly authorize such review. The

9

court concluded that "the words of the statute arguably do not fully resolve the issue." We agree with this conclusion.

Like the trial court, we turn to extrinsic aids to interpret the provision. We note that LAUSD has not identified any legislative history or contemporaneous administrative construction it wishes us to consider. LAUSD makes no attempt to address the statutory scheme of which section 44939 is a part. LAUSD focuses only on public policy. In its view, review of a MIRS order is necessary to enable school districts to recover money paid to employees who prevail on a MIRS but are subsequently dismissed for willful refusal.

The trial court considered other provisions of the Education Code and attempted to harmonize them with section 44939. The court found persuasive the Legislature's decision to separate the provisions concerning reversals of suspension pending dismissal from those applicable to decisions on the merits concerning dismissal. As the trial court explained, section 44939 gives the OAH, through an ALJ, the authority to decide a MIRS. The merits determination in the dismissal proceeding is assigned to the CPC. The ruling on the MIRS has no bearing at all on the decision on the merits. (§ 44939, subd. (c)(4) ["The grant or denial of the motion shall be without prejudice to consideration by the Commission on Professional Competence, based upon the full evidentiary record before it, of the validity of the grounds for dismissal. The ruling shall not be considered by the commission in determining the validity of the grounds for dismissal, and shall not have any bearing on the commission's determination regarding the grounds for dismissal."].)

As the trial court pointed out, in contrast to section 44939, "judicial review of a dismissal or a suspension proceeding after a merits hearing by the CPC is expressly made available pursuant to Education Code section 44945. That section provides court review in the same manner as review of a decision made by a hearing officer under the provision of the Administrative Procedure Act. (Educ. Code § 44945.) The statute provides that the court, on review, exercises its independent judgment on the evidence. (Ibid.) This section does not authorize judicial review of MIRS decisions—only review of a decision by the governing body of a school district to dismiss or suspend initiated pursuant to Section 44934 or 44934.1."

We agree with this analysis and would add only that the Legislature has provided specific guidelines for a decision by the CPC on the merits and those guidelines do not include any determination of whether a MIRS ruling is correct. In dismissal proceedings, the CPC is limited to deciding whether the employee should or should not be dismissed. (§ 44944, subd. (d)(1); see *Kolter v. Commission on Professional Competence of Los Angeles Unified School Dist.* (2009) 170 Cal.App.4th 1346, 1353 ["the Commission hearing evidence in a dismissal proceeding does not have the statutory authority to impose discipline other than dismissal"].)[6] Thus, the final merits decision by the CPC in a

_____

[6]     Subdivision (d)(1) of section 44944 provides in full: "The decision of the Commission on Professional Competence shall be made by a majority vote, and the commission shall prepare a written decision containing findings of fact, determinations of issues, and a disposition that shall be, solely, one of the following: [¶] (A) That the employee should be dismissed. [¶] (B) That the employee should be suspended for a specific period of time without pay. [¶] (C) That the employee should not be dismissed or

11

dismissal proceeding cannot properly include review of a MIRS ruling concerning suspension.

We also agree with the trial court that it is significant sections 44945 and 44939 are both part of Article 3 (Resignations, Dismissals and Leaves of Absence). As the trial court pointed out, section 44945 shows that the Legislature knew how to provide for court review, and it is noteworthy that nowhere in Article 3 does it provide for court review of a MIRS order. We would add only that the Legislature's failure to expressly provide for judicial review of one aspect of dismissal (MIRS order) in the same manner as it did for judicial review of another aspect of dismissal (final merits decision) suggests the Legislature did not intend to provide for judicial review of the MIRS order.

LAUSD summarizes but does not directly address the trial court's ruling, apart from its focus on the implications of the interlocutory prohibition. Instead, LAUSD contends that declaring judicial review unavailable for a MIRS order would create an absurd application of section 44939.

LAUSD first specifically contends: "[A]lthough the MIRS was granted, LAUSD was successful with its [s]ection 44939 cause of dismissal when presenting evidence at the dismissal hearing to prove willful refusal to perform the regular

---

suspended." (§ 44944, subd. (d)(1).) In this context, "suspension for a specific period of time without pay" is a form of ultimate relief which a school board may seek for unprofessional conduct. (§ 44932, subd. (b) ["school district may suspend without pay for a specific period of time on grounds of unprofessional conduct a permanent certificated employee"].) The other form of ultimate relief which a school board may seek is dismissal. (§ 44934, subd. (a).) This was a dismissal proceeding.

12

assignments without reasonable cause. Fundamentally, LASUD was able to prove something that was not sufficiently alleged in its pleading. Without judicial review of the MIRS, this contradictory result remains intact."

LAUSD is conflating two different things. Suspension is not mandatory for a charge of willful refusal, and so not all acts of willful refusal warrant an immediate suspension. If they did, suspension *would* be mandatory. It is the ALJ's task to determine whether the particular facts of the willful refusal alleged in the charges, if true "are sufficient to constitute a basis for immediate suspension." Subsequent proof that the facts are true does not contradict a finding in the MIRS order that those facts are not sufficient to constitute a basis for immediate suspension.

LAUSD also contends "the MIRS statute leaves school districts in an untenable situation. After assessing that a certificated employee should be dismissed and be immediately suspended to maintain a safe school environment, the granting of a MIRS potentially requires the school district to place the certificated employee into an assignment that may threaten a safe school environment. Because the school district can proceed to prove-up the causes of dismissal under section 44939 at the merits hearing, the school district must then argue that the certificated employee, who happens to be paid and assigned to a school district position, is a danger to a safe school environment."

We are baffled by this claim for several reasons. Section 44939 expressly provides: "A motion for immediate reversal of suspension pursuant to this section does not affect the authority of a governing board of a school district to determine the physical placement and assignment of an employee who is suspended or

13

placed on administrative leave during the review of the motion or while dismissal charges are pending." (§ 44939, subd. (d).) Indeed, LAUSD contends it assigned Essah to her home after the MIRS ruling.

More important, even if LAUSD were correct and school boards were required to assign an employee to a position which potentially threatened school safety following the granting of a MIRS, permitting judicial review of the MIRS decision after a final merits decision would not solve the problem. An assignment after a MIRS ruling and pending a final merits decision could be addressed by interlocutory review only, which section 44939 expressly prohibits.

Finally, LAUSD is not required to argue or prove at the merits hearing that a certificated employee charged with willful refusal is a danger to school safety. As set forth in the background section above, the word "safe" only appears once in LAUSD's statement of charges; "safety" does not appear at all. The word "safety" appears only three times in the decision on the merits, none in connection with Essah's behavior. The word "safe" does not appear at all.

Under the same "Absurd Application" heading in its brief, LAUSD contends the MIRS ruling forced it to assign Essah to her home to avoid risking school safety and absent judicial review of a MIRS decision, "LAUSD is precluded from recovering any public funds that were used to maintain a safe school environment. This is such a one-sided scenario. If the teacher is placed in unpaid status but prevails at their dismissal hearing, school districts are required to make the employee whole with retroactive salary, benefits and pension contributions. However, the reverse is not true. Should the employee remain in paid

status and not prevail at the hearing, such as Essah, the school district is unable to recoup paid salary for the time when the employee is sitting at home."[7]

This is primarily a public policy argument, specifically that the need to recover public funds weighs in favor of allowing judicial review of MIRS orders. Indeed, that would be the only possible benefit to a school district from review of a MIRS order.

LAUSD, however, has not shown that the Legislature determined that recovery of MIRS payments was necessary. LAUSD overlooks the fact that the Legislature was willing in other circumstances to require school districts to continue to make salary and other payments to employees during dismissal proceedings; it was aware it could be difficult to recover such payments when the outcome of the proceedings warranted; and it knew how to ensure that the funds were recovered.

As discussed in footnote 3, *ante*, section 44940 requires that employees charged with certain criminal offenses be placed on a compulsory leave of absence. Section 44940.5, subdivision (b) provides "[a]n employee placed upon compulsory leave of absence pursuant to this section shall continue to be paid his or her regular salary during the period of his or her compulsory leave of absence if and during that time he or she furnishes to the school

---

[7] LAUSD overlooks a third scenario: The employee loses the MIRS and remains suspended without pay and then loses on the merits. The employee has no ability to challenge the MIRS ruling on the ground that his or her immediate suspension was not a necessity, and thus has no ability to be awarded pay for the unjustified suspension. The inability to seek review of the MIRS order affects the party which loses the motion, whether LAUSD or the employee. This is not one-sided.

15

district a suitable bond, or other security acceptable to the governing board, as a guarantee that the employee will repay to the school district the amount of salary so paid to him or her during the period of the compulsory leave of absence in case the employee is convicted of the charges, or fails or refuses to return to service following an acquittal of the offense or dismissal of the charges."  (§ 44940.5, subd. (d).)

Section 44940.5, like section 44939, is located in Article 3 addressing dismissal proceedings.  Yet nowhere in section 44939 does the Legislature mention, let alone provide a clear mechanism for recovering, payments made as a result of a MIRS order when the employee is subsequently dismissed on charges listed in section 44939.  The most logical reason for the Legislature to omit any mention of recovery would be that the Legislature did not intend there to be any basis for recovery, that is, because it intended the ALJ's ruling on the MIRS motion to be both final and not affected by the merits determination.  Put differently, the Legislature's failure to mention recovery of funds undercuts the only real rationale for review of a MIRS order identified by LAUSD: recovery of funds paid to dismissed employees.

Making such a choice to preclude judicial review of a MIRS order would be rational and consistent with the Legislature's goals in enacting Assembly Bill No. 215, the bill which added the MIRS procedure.  The Legislature wanted to streamline the procedures for discipline and dismissal to make them more cost

16

effective.[8] Omitting judicial review would both streamline proceedings and reduce the costs and delay involved in pursuing such review.

Judicial review of MIRS orders might enable school districts to recoup some payments made to employees, as LAUSD seeks to do here. However, because changing the MIRS procedure to allow judicial review is a public policy argument, it should be addressed to the Legislature. Perhaps LAUSD recognizes this, as it has not fully developed its argument in this regard. There is nothing in the record to indicate how many MIRS orders are granted, or how many of the employees who obtain a grant are ultimately dismissed on substantiated charges in section 44939. Similarly, there is no evidence of the costs to the school districts of pursuing such review, which will almost certainly not be uniformly favorable to the school district or always result in successful collection of the payments made to the employees.

---

[8] Subdivision (c) was added to section 44939 by Statutes 2014, chapter 55, section 8, effective January 1, 2015 with the passing of Assembly Bill No. 215. Section 1 of Assembly Bill No. 215 states: "The Legislature finds and declares both of the following: [¶] (a) Pupils, educators, school administrators, school boards, and school district employees need a certificated employee dismissal process that is both fair and efficient. [¶] (b) This act is intended to revise existing statutes in a manner that will update and streamline the procedures for certificated employee discipline and dismissal, making it more cost effective and reducing the time necessary to complete the dismissal process."

17

In sum, LAUSD has failed to show that in adding the MIRS procedure, the Legislature intended school districts to be able to recover payments to subsequently dismissed employees. If LAUSD believes such recovery should be permitted through judicial review of MIRS orders or otherwise, it should address the Legislature.

B.    *Code of Civil Procedure Section 1094.5 Does Not Authorize Review of a MIRS Order.*

LAUSD contends that review of the MIRS ruling is available under Code of Civil Procedure section 1094.5, which provides for limited judicial review "into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer[.]" (Code. Civ. Proc., § 1094.5, subd. (a).) LAUSD made this same claim in the trial court, but the trial court found LAUSD had provided no discussion of the section nor any relevant case authority, thereby forfeiting the claim.

LAUSD does not address the court's forfeiture argument and has not remedied the defects identified by the trial court. It has not provided any reasoned argument or relevant case law. Specifically, LAUSD has failed to offer any theory as to how Code of Civil Procedure section 1094.5, subdivision (a), which applies to any decision in which "evidence [was] required to be taken," would apply to a MIRS proceeding, which is expressly limited to the allegations of the Statement of Charges. Any reliance by LAUSD on the definitions in Code of Civil Procedure section 1094.6 is misplaced. Subdivision (e) of section 1094.6 defining

18

the subject matter of decisions reviewable under section 1094.5, does not override the requirement of 1094.5 that the decision be "made as the result of a proceeding in which . . . evidence [was] required to be taken."[9]  (§ 1094.5, subd. (a).)

C.    *LAUSD Has Not Shown an Act in Excess of or Without Jurisdiction, and So Cannot Obtain Judicial Review on That Basis.*

Although it makes this argument under the heading "The Merits of LAUSD's First Amended Petition," LAUSD contends that when an ALJ acts in excess of and without jurisdiction, a court is permitted to grant relief even if administrative remedies have not been exhausted.  LAUSD claims that is the situation here:  the ALJ lacked jurisdiction to hear the MIRS because Essah did not file and serve the MIRS within 30 days of notice, as section 44939 specifies.  Assuming for the sake of argument that an otherwise unreviewable act is reviewable if it is made in excess of or without jurisdiction, we would find that LAUSD has not shown the ALJ acted in excess of or without jurisdiction.

LAUSD does not discuss section 44939 MIRS procedures in the context of Article 3 and does not cite any relevant analogous case law.  At most, LAUSD points out that the word "shall" in the Education Code means "mandatory."  Section 44939, however,

---

[9]    Section 1094.6, subdivision (e) of the Code of Civil Procedure states: "decision means a decision subject to review pursuant to Section 1094.5, suspending, demoting, or dismissing an officer or employee, revoking, denying an application for a permit, license, or other entitlement, imposing a civil or administrative penalty, fine, charge, or cost, or denying an application for any retirement benefit or allowance."  (Code Civ. Proc., § 1094.6, subd. (e).)

does not provide any consequences for failing to meet this "mandatory" deadline.  LAUSD has not provided any legislative history showing the Legislature intended the ALJ to lose jurisdiction of a late-filed MIRS.  Absent such unknown history, there is no reason to think the Legislature intended that an employee, for whose benefit the MIRS proceeding exists, would completely lose her right to a MIRS hearing if she files and serves the MIRS a few days late, particularly where, as here, the ALJ finds the delay excusable.  Although section 44944 makes clear that the Legislature intended to require speedy dismissal proceedings,[10] a MIRS motion is completely separate from the dismissal proceedings, and the grant or denial of the MIRS has no effect on the dismissal proceedings.  Thus, the draconian measure LAUSD proposes is not supported by the overall statutory time requirements for dismissal proceedings.

Contrary to LAUSD's broad claims, there is no legal authority supporting the proposition that a party's failure to comply with a mandatory filing and service deadline necessarily deprives a court (or administrative body) of jurisdiction to act on the motion, or creates a bar to relief.  As the cases cited by LAUSD do show, such a deprivation or bar may occur in some circumstances.  None of those circumstances are relevant here.

In three of the four cases cited by LAUSD, the consequence of the failure to comply with a statutory deadline was spelled out in the statute itself.  (*Silver v. McNamee* (1999) 69 Cal.App.4th 269, 272, fn. 2 [considering Code of Civil Procedure section 364, which provides "[n]o action . . . may be commenced unless the

---

[10]     Even so, the statute permits extensions of the required start and completion times for good cause.

20

defendant [health care provider] has been given at least 90 days prior notice of the intention to commence the action"]; *Douglas v. Willis* (1994) 27 Cal.App.4th 287, 290 [considering court rule which provided: "After the time has passed for the motion to strike or tax costs . . . the clerk shall enter costs on the judgment"]; *Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 130 [considering Government Code section 66499.37 which expressly provided: "Any action or proceeding . . . shall not be maintained by any person unless the action or proceeding is commenced and service of summons is effected within 90 days after the date of the decision. Thereafter all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the decision or of the proceedings, acts, or determinations."].) Similar consequences are not set out in section 44939.

The fourth case cited by LAUSD is not based on a specific deadline, although one existed in a court rule. The court in that case found a judgment of dismissal void because due process requires notice to a plaintiff before a dismissal, and notice was not properly given. (*Lee v. Placer Title Co.* (1994) 28 Cal.App.4th 503, 511.) Notice to the opposing party is not an issue on this appeal.

LAUSD offers no cogent argument for applying these disparate and dissimilar cases, involving specific consequences outlined by statute for specifically delineated proceedings, to the facts before us in this appeal. Because LAUSD has failed to show that the ALJ in this case lacked jurisdiction to decide the MIRS, we need not consider its claim that such a lack of jurisdiction would be reviewable by writ proceedings.

21

D. *Because Judicial Review Is Not Authorized, We Do Not Consider the Remainder of LAUSD's Arguments.*

Because we find that a MIRS order is not reviewable, we do not consider LAUSD's contentions about the merits of the order. We also do not consider LAUSD's proposed remedies for what it claims is error in issuing the MIRS order. To be clear, because the ALJ reversed the suspension, LAUSD is not entitled to restitution for the salary and other payments LAUSD made to or on behalf of Essah in the period between the MIRS ruling and the final decision on the merits. LAUSD is not entitled to a declaratory judgment because there is no justiciable controversy concerning whether a teacher must return money received as a result of an "erroneous" MIRS order. This is because courts have not been tasked with reviewing such an order to determine error and because the Legislature has chosen not to provide a way to recover payments when an employee is ultimately ordered dismissed.

**DISPOSITION**

The trial court's judgment is affirmed.  The court awards no costs on appeal.

**CERTIFIED FOR PUBLICATION**


                                                    STRATTON, P. J.

We concur:



        GRIMES, J.



        PERLUSS, J.*

---

*     Presiding Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned to Division Eight by the Chief Justice pursuant to article VI, section 6 of the California Constitution.